UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|---|---|---|---|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | |
|---|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**     **(In Chambers) Order DENYING Motion for Preliminary Injunction**

Before the Court is Plaintiff Hasbro, Inc.'s motion for preliminary injunction. The Court heard oral argument on the matter on March 19, 2012. Having read and considered the moving and opposing papers and the arguments made at the hearing, the motion is DENIED.

I.     Background

This is a trademark infringement and dilution case. At issue are Defendants Asus Computer International, Inc. and AsusTek Computer, Inc.'s (collectively, "Asus") marketing and sale of two tablets computers, known formally as the Asus *Eee Pad* Transformer TF 101 and Asus *Eee Pad* Transformer Prime TF 201, but also marketed simply as the "*Eee Pad* Transformer" and the "*Eee Pad* Transformer Prime." *See Krumholz Reply Decl.* ¶ 2; *Yang Decl.* ¶ 2. Hasbro contends these products infringe and dilute its "Transformers" and "Transformers Prime" marks.

A.     The Parties

Beginning in 1984, Plaintiff Hasbro, Inc. ("Hasbro"), a toy manufacturing company, developed a line of toy robots that transformed into other forms. *Archer Decl.* ¶ 4. Focusing on a multi-faceted approach to character development and storytelling, the product launch of the "Transformers" was accompanied by animated television and comic book series designed to promote the toys and introduce consumers to the Transformers universe. *Id.* The central and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#29

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|---|---|---|---|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

consistent theme throughout the Transformers storyline is the struggle between good and evil, as played out in the conflict between "good" Transformers, known as Autobots, and "bad" Transformers, known as Decepticons. *Id.* ¶ 5. The Autobots are led by the virtuous Optimus Prime character, while the Decepticons follow the powerful Megatron. *Id.* According to Hasbro, Optimus Prime is intended to epitomize honor, duty, leadership, and freedom. *Id.* ¶ 6.

By 1986, Transformers had spawned its first full-length animated motion picture. *Id.* ¶ 8. Although the property has been on the market continually since its 1984 debut, it reached new levels of popularity in 2007, following the release of the first Transformers full-length action movie. *Id.* ¶ 9. The movie grossed over $700 million in box office revenue, leading to two other full length major motion pictures. All in, the films have generated over $2.65 billion in revenue and launched an array of licensing and cross-promotional relationships, totaling over 800 licensing deals and 11,000 "Transformers"-branded products. *Bouyer Decl.* ¶ 4. Several companies also placed products in the movies, including LG Electronics, whose products appeared in both the second and third films. *Archer Decl.* ¶ 9. In the third film, an Autobot character known as "Brains" disguised itself as a Lenovo ThinkPad Edge Plus laptop. *Archer Decl.* ¶ 10.

According to Hasbro, the Transformers mark can be found on various "computer-related" products, including USB storage drives, computer mouses, skins for laptops, speaker heads and iPod docks. *See Bouyer Decl.* ¶ 5, Exs. 1, 4. A Transformers-branded product which Hasbro refers to as a children's "educational laptop" has also been offered for sale in major retail chains throughout the United States, including Wal-Mart, Target, Kohl's and Toys "R" Us. *Id.* ¶ 6, Ex. 2. Additionally, a cross-promotional LG commercial using Transformers characters was aired in connection with the "Transformers: Revenge of the Fallen" film. *See id.*, Ex. 3. The commercial features a human holding an LG Versa smartphone, who is approached by Optimus Prime. Optimus Prime accuses the LG Versa smartphone of being a Decepticon, and his suspicions appear to be confirmed when the smartphone "transforms," in the distinctive manner seen in the films, into a video camera, and then into a GPS device, and finally into a laptop computer.

The Transformers characters receive unsolicited media attention, such as a Yahoo! Sports blog which questioned "which players and coaches in the [NFL] would be the best fits with [] robots from the popular action figures, TV series and movie franchise?" and a New York Times

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|---|---|---|---|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

feature crowning Optimus Prime as the "Toughest Robot in the Nerd Universe." *See Archer Decl.*, Ex. 1, 4.

B.     The "Transformers" and "Transformers Prime" Marks

In 2000, Hasbro filed for registration of its Transformers mark in International Class 028, representing "toy action figures, toy vehicles, and toy robots convertible into other visual forms." *See Vanasse Decl.*, Ex. 20.  Hasbro also attaches a pending trademark registration (Serial No. 76690677) for a "TRANSFORMERS" mark registered in International Class 041, covering "entertainment services, namely, production and distribution of movies and on-going animated television series." *See Vanasse Decl.*, Ex. 20.  This application was filed on June 19, 2008. *Id.*

In late 2010, Hasbro joined with Discovery Communications to launch a children's television channel called "The Hub." *See Vogel Decl.* ¶ 3.  As a centerpiece for that network, Hasbro developed the "Transformers Prime" animated television series, which began airing in approximately November 2010. *Vogel Decl.* ¶ 4.  The series focuses on the life and story of the Optimus Prime character. *Id.* "Prime" was added to the "Transformers" mark in the program's name to emphasize this focus. *Id.* Thus far, the series has received several Emmy nominations and awards and has been aired in 170 countries. *Id.* ¶ 5.  Hasbro filed an application for its "Transformers Prime" mark in International Classes 028 and 041, which is currently pending. *See Vanasse Decl.*, Ex. 20.  A major marketing launch of "Transformers Prime" merchandise is planned for March 2012. *Vogel Decl.* ¶ 7.

C.     Asus and the "Transformer" and "Transformer Prime" Tablets

Defendant Asus is a manufacturer of high-end electronics such as computers, laptops, tablet computers, server systems, and motherboards.  Since Asus's founding in 1990, the company has grown from a modest startup into a global technology leader. *Yang Decl.* ¶ 2.  Approximately 30% of all Personal Computers (PCs) sold in the United States come equipped with an Asus motherboard. *Id.* ¶ 3.  Using the Google *Android* operating system, Asus competes with companies such as Apple and Acer in the market for high-end electronics. *Id.* ¶ 4.  Asus has appeared in *BusinessWeek's* "InfoTech 100" and "Asia's Top 10 IT Companies" rankings. *Id.* The company has been recognized by the *Wall Street Journal Asia* as number one in quality

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|---|---|---|---|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

and service, and has received numerous other awards for its innovative products. *Id.* Asus is listed on both the London Stock Exchange and the Taiwan Stock Exchange.

On January 4, 2011, Asus announced the release of its first *Eee Pad* Transformer TF 101 tablet. According to Asus, it "described its *Eee Pad* tablet as a 'transformer' because it could transform from a tablet computer into a laptop when connected to its mobile docking station, which includes a full QWERTY keyboard, USB port, SD card slot and an extra battery." *Yang Decl.* ¶ 5. This transforming feature distinguishes the Asus tablets from the Apple *iPad* and other tablets, and is a primary selling point for Asus. *Id.* The *Eee Pad* Transformer TF 101 was first offered for sale in April 2011. *Yang Decl.* ¶ 6. On October 19, 2011, Asus announced the second generation of its *Eee Pad* Transformer product – the *Eee Pad* Transformer Prime. *Yang Decl.* ¶ 7. Asus contends it added the word "prime" to the name of its *Eee Pad* Transformer because it was a "premium tablet slated to be the world's first tablet computer to offer the NVIDIA *Tegra 3* (Kal El) quad-core processor, and either come with, or be upgradeable to, the latest Google *Android* operating system, *Ice Cream Sandwich* 4.0." *Yang Decl.* ¶ 4. "Prime" was also selected "to emphasize the tablet was first in time, rank, authority, and significance, and of high quality," and because it "signaled that the Asus tablet was the newest design (this time with a metallic spun casing), first rate, a premium device and of first importance." *Id.*

The Asus *Eee Pad* Transformer TF 101 and the Asus *Eee Pad* Transformer Prime TF 201 tablet computers were originally sold for between $400-$600 depending on the hard drive size and model. *Id.* ¶ 11. The accompanying mobile keyboard dock, which allows the tablet to function as a laptop, was sold separately for approximately $150. *Id.* Accordingly, the total cost of the complete *Eee Pad* "Transformer" product was between $550-$750. *Id.* The Asus *Eee Pad* Transformer and Transformer Prime tablets have received numerous awards and recognition in the market place. *Yang Decl.* ¶ 8. Asus maintains that it did not choose the descriptive words "transformer" or "prime" to confuse or mislead consumers that its tablet computer was somehow associated with Hasbro's Transformers mark, and was unaware of the "Transformers Prime" cartoon show. *Yang Decl.* ¶ 7.

D.    The Parties' Dispute

On January 19, 2011, two weeks after Asus announced the release of the first *Eee Pad* Transformer, Hasbro sent a cease and desist letter to Asus claiming Asus's use of the word "Transformer" was likely to cause confusion and would dilute Hasbro's Transformers mark.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|---|---|---|---|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

*Chen Decl.*, Ex. 38.  Counsel for Asus responded on February 10, 2011, indicating its understanding that the "Transformers" mark did not apply to the netbook computer classification of goods and services, and that its use of "transformer" in the *Eee Pad* Transformer was descriptive. *Chen Decl.*, Ex. 39.  Despite the fact that the *Eee Pad* Transformer became available for sale in April 2011, no further correspondence was exchanged for the remainder of 2011, until just prior to the initiation of this case on December 16, 2011.  *Chen Decl.* ¶ 3.  On October 19, 2011, Asus announced the release of the *Eee Pad* Transformer Prime.  *Yang Decl.* ¶ 7.  The second generation tablet was first sold in the United States on or about December 19, 2011.  *Id.*

On December 16, 2011, Hasbro filed a complaint and an ex parte application for immediate scheduling conference and expedited discovery in connection with a forthcoming motion for preliminary injunction on the grounds that Asus's use of the words "Transformer" and "Transformer Prime" infringe and dilute its marks.  *See* Dkt. # 1, 2, 3, 29.  Although the *Eee Pad* Transformer has been on the market for almost a year and the *Eee Pad* Transformer Prime is already being sold, Hasbro claims preliminary injunctive relief is warranted because it plans to launch a line of "Transformers Prime" merchandise in March 2012.

II.     Legal Standard

A preliminary injunction is an "extraordinary and drastic remedy."  *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (quotation marks and citation omitted).  A party seeking a preliminary injunction must make a "clear showing" of each of the following elements: (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) an advancement of the public interest.  *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).  A preliminary injunction may also be appropriate "when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," so long as the other *Winter* factors are met.  *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (citation and modification omitted) (allowing for a post-*Winter* "sliding scale" analysis in preliminary injunction inquiries where "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another").

III.    Discussion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|---|---|---|---|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

A.      Likelihood of Success on the Merits

a.      Trademark Infringement

To prevail on a claim of trademark infringement under the Lanham Act, 15 U.S.C. § 1114, a party "must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006). A plaintiff asserting initial interest confusion must still "demonstrate likely confusion, not mere diversion." *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011).

"The threshold issue in any action for trademark infringement is whether the words used by a manufacturer in connection with his product are entitled to protection." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1014 (9th Cir. 1985). Protectable interest can be shown in any one of three ways: (1) the mark is federally registered; (2) the mark is descriptive but has acquired a secondary meaning in the market; or (3) it has a suggestive mark, which is inherently distinctive and protectable. *See Applied Information Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007).

The Transformers trademark is protectable because it is federally registered. *See Applied Information Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007); *Vanasse Decl.*, Ex. 20. Registration of a mark "on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use the mark on the goods and services specified in the registration." *Id.*; *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005) (Registration "discharges the plaintiff's original common law burden of proving validity in an infringement action."). Although "Transformers Prime" has not yet been registered, its trademark application is pending and Asus does not dispute its protectable interest. *See Opp.* 11:9-22. Because there is no dispute regarding protectable interest, the parties focus their attention on the likelihood of confusion factor.

"Likelihood of confusion exists when consumers viewing the mark would probably assume that the goods it represents are associated with the source of a different product identified by a similar mark." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 608 (9th Cir. 2005). The Ninth Circuit employs an eight-factor test in determining

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|----------|----------------------|------|----------------|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

whether a likelihood of confusion exists.  *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).  These factors are: 1) the strength of the mark; 2) proximity or relatedness of the goods; 3) the similarity of the marks; 4) evidence of actual confusion; 5) the marketing channels used; 6) the degree of care customers are likely to exercise in purchasing the goods; 7) the defendant's intent in selecting the mark; and 8) the likelihood of expansion into other markets.  *Id.*  Although the above factors are all appropriate for consideration in determining whether likelihood of confusion exists, not all of the factors are of equal importance or applicable in every case.  *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1008 (9th Cir. 2001).

In applying the *Sleekcraft* factors, the Ninth Circuit has admonished courts to be "[m]indful that the *sine qua non* of trademark infringement is consumer confusion, and that the *Sleekcraft* factors are but a nonexhaustive list of factors relevant to determining" this dispositive inquiry.  *See Network Automation*, 638 F.3d at 1142.  The factors, "not surprisingly tend to overlap and interact."  For example, "if the trademark holder's mark is weak, 'only if the marks are quite similar, and the goods closely related will infringement be found.'"  *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002) (quoting *Sleekcraft*, 599 F.2d at 350).  The assessment of likelihood of confusion is predominately factual in nature.  *E&J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992).

### i.     Strength of the Mark

The strength of a trademark is evaluated in terms of its conceptual strength and its commercial strength.  *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000).  Trademarks may be classified as generic, descriptive, suggestive, arbitrary, or fanciful.  *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  "The strongest marks - that is, those which receive the maximum trademark protection - are "arbitrary" or "fanciful."  *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002).  The weakest marks, entitled to no trademark protection, are "generic."  *Id.*  In between lie "suggestive" and "descriptive" marks; suggestive marks have the greater strength of the two.  *Id.*

The parties dispute whether the Transformers mark is descriptive or suggestive.  Throughout its motion Hasbro attempts to lump the "Transformers" and "Transformers Prime" marks together, with the latter helping to edge the former towards suggestiveness, and the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|---|---|---|---|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

demonstrable success of the "Transformers" mark aiding in the commercial strength of the "Transformers Prime" mark.  Nonetheless, the Court analyzes the marks separately.

Descriptive marks define qualities or characteristics of a product in a straightforward way that requires no exercise of the imagination to be understood.  *Entrepreneur Media*, 279 F.3d at 1142.  A suggestive mark is one for which "a consumer must use imagination or any type of multistage reasoning to understand the mark's significance,…the mark does not *describe* the product's features, but *suggests* them."  *Id.* (emphasis in original) (quoting *Kendall-Jackson Winery*, 150 F.3d at 1047 n.8).  "Whether a mark suggests or describes the goods of the trademark holder depends, of course, upon what those goods or services are."  *Id.*  In this case, the "Transformers" mark was registered in International Class 028, representing "toy action figures, toy vehicles, and toy robots convertible into other visual forms."  *See Vanasse Decl.*, Ex. 20.[1]

It is often true that no bright-line separates descriptive from suggestive marks, and "whether a mark is descriptive or suggestive can be a hotly disputed issue."  *Entrepreneur Media*, 279 F.3d at 1142.  Without deciding the question, the Court merely notes that the "Transformers" mark has some descriptive attributes when applied to "toy robots convertible into other forms," such that it is not clearly suggestive.  While there may be more to the Transformers than meets the eye, a jury could conclude that the Transformers mark is but a straight-forward description of the figurines' central and uniting characteristic, and therefore that when faced with robots that transform into vehicles and other machines, "an entirely unimaginative, literal-minded person would understand the significance of the ["Transformers"] reference."  *Entrepreneur Media*, 279 F.3d at 1142; *accord Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc.*, 618 F.3d 1025, 1034 (9th Cir. 2010) (finding summary judgment as to whether Plaintiff's "Delicious" mark was descriptive or suggestive when applied to women's shoes improper because "[t]o the extent 'delicious' means 'affording great pleasure,' for example, it seem[ed] to directly convey a real and unequivocal idea of some characteristic, function, quality or ingredient of" the product).  "At trial, [Hasbro] will have the opportunity to prove that its mark is stronger than it currently appears."  *Entrepreneur Media*, 279 F.3d at 1144.

---

[1] Hasbro also attaches a pending trademark registration (Serial No. 76690677) for a "TRANSFORMERS" mark registered in International Class 041, covering "entertainment services, namely, production and distribution of movies and on-going animated television series."  *See Vanasse Decl.*, Ex. 20.  This application was filed on June 19, 2008.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|---|---|---|---|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

    Nonetheless, the distinction is of less importance here, as "[a]lthough a suggestive or descriptive mark ... is inherently a weak mark, it 'may be strengthened by such factors as extensive advertising, length of exclusive use, public recognition....'" *See Entrepreneur Media*, at 1144 (citations omitted). The Transformers brand has enjoyed popularity since its inception almost thirty years ago, and has recently been the subject of three full-length feature films that grossed over $2.65 billion in ticket sales. Some 800 licensing deals followed, resulting in the creation of over 11,000 Transformers-branded products. From 2004 to 2010, products associated with the Transformers marks have generated over $2 billion in revenue for Hasbro, who alone has spent over $250 million promoting, marketing and protecting the Transformers brand. As demonstrated by the unsolicited attention it receives from outlets such as Yahoo! Sports and the New York Times, the Transformers mark evokes recognition and association by virtue of its secondary meaning. Accordingly, whether descriptive or suggestive, the Court concludes that the Transformers mark is strong. *But see Entrepreneur Media*, 279 F.3d at 1144 (concluding the descriptive "Entrepreneur" mark was weak despite having been in use for 25 years and the fact that Entrepreneur magazine sold over half a million copies and reached over two million readers monthly).

    Turning to the Transformers Prime mark, which also has applications pending in International Classes 028 and 041, this mark is likely suggestive as applied to an animated series focusing on a particular Transformers character. Although "prime" has a commonly-understood meaning, in this instance it is used to reference the Optimus Prime character, and therefore conjures associations with the secondary meaning attached to the Transformers brand, and not its dictionary definition. The evidence of the Transformers Prime mark's commercial strength is not as strong as that of the Transformers mark. Although Hasbro submits that the television show has received two Emmy awards and is currently being broadcast in 170 countries, it has only been airing since approximately November 2010. No evidence has been submitted regarding its use on merchandise. Nonetheless, the Court finds this showing, combined with the overall commercial strength of the Transforms brand, sufficient to deem the "Transformers Prime" mark strong as well.

    In sum, the Court concludes that the strength of the Transformers and Transformers Prime marks weighs in favor of Hasbro by virtue of the secondary meaning and commercial strength the marks have obtained. However, the Ninth Circuit has intimated that because analyzing commercial strength is an evidence-intensive inquiry, its consideration is unnecessary, and may be improper, at the preliminary injunction stage. *See Network Automation, Inc. v. Advanced*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|---|---|---|---|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

*Systems Concepts, Inc.*, 638 F.3d 1137, 1150 (9th Cir. 2011).  As the Court's determination regarding the strength of the Transformers and Transformers Prime mark turns in large part on their commercial strength, this factor favors Hasbro only slightly.

ii.    <u>Proximity of the Goods and Likelihood of Market Expansion</u>

"Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods."  *Network Automation*, 638 F.3d at 1150.  "[T]he danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists."  *Sleekcraft*, 599 F.2d at 350.  The proximity of goods is measured by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function.  The reference point for this and the remaining *Sleekcraft* factors "is the typical buyer exercising ordinary caution."  *Fortune Dynamic*, 618 F.3d at 1038.

Asus contends that this factor weighs in its favor, and the Court agrees.  Asus is a manufacturer of high-end electronics, and the *Eee Pad* Transformer and *Eee Pad* Transformer Prime are expensive tablet computers that compete against products such as the Apple *iPad*.  Asus markets its product by advertising its cutting edge technology and functionality, touting the *Eee Pad* Transformer Prime as the first tablet computer with the NVIDIA *Tegra 3* quad-core processor and equipped with the latest Google *Android* operating system, *Ice Cream Sandwich* 4.0.  The Asus tablets are minimalist and sleek, and the most prominent aesthetic feature is the Transformer Prime's spun metal exterior.

Hasbro leans heavily on the "complimentary" prong, but its best evidence of proximate goods consists of an LG smartphone with Transformers decals on the back, computer mouses with Transformers insignia on them, laptop "skins," which are decorative items consumers can attach to their computers to make them look like they hail from the Transformers' universe, and Transformers-themed USB storage devices and "speaker heads."  Each of these products is gimmicky – the speaker heads are shaped like Autobot and Decepticon heads, and the USB storage devices share the same attributes.  What Hasbro calls an "educational laptop" is the biggest stretch of all.  This product is a plastic clamshell with a tiny screen in the middle more reminiscent of a TI-82 calculator than the high-end displays featured on Asus's tablets.  Asus submits uncontested evidence that this product is a toy marketed to children that retails for approximately $30.00.  Again, it is surrounded on all sides by stylized Transformers characters.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|----------|----------------------|------|----------------|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

There is nothing gimmicky about the *Eee Pad* Transformer or the *Eee Pad* Transformer Prime, nor can it be said that there is any similarity in the use or function between Hasbro and Asus's products.

These differences also strongly suggest that the products are not sold to the same class of purchasers. Hasbro offers the declarations of some of its employees that the popularity of the Transformers *property* spans many age groups, including young adults. *See Archer Decl.* ¶ 15. Mr. Archer then opines that the actors in Asus's *Eee Pad* commercials appear to fall into this age group. The Court disagrees in part with this classification, as at least one of the advertisements appears to feature adults in their mid-twenties to earlier thirties comparing laptops and tablets in a coffee shop. In any event, the popularity of the Transformers intellectual property with young adults generally says nothing as to whether the class of consumers interested in buying Transformers-themed speaker heads and USB storage devices overlaps with those in the market for the upscale *Eee Pad* tablets. Thus, accepting that the Transformers brand is appealing to young adults, Hasbro still has submitted no evidence that its "related products" would appeal to the same consumers looking to purchase a $550-750 high-end tablet.

The products differ markedly in design and function, they are minimally, if at all complimentary, and they facially appear to target very different consumers. Hasbro has produced insufficient evidence to rebut this showing. And although Hasbro offers a declaration that it is "still interested and looking for opportunities to brand a laptop with the Transformers mark," this conclusory assertion is alone insufficient for the Court to find a likelihood of overlapping product expansion. Given that Asus already markets the *Eee Pads* and the injunctive relief Hasbro requests would alter the status quo ante, Hasbro's bare assertion that it is "still interested" in pursuing Transformers-branded laptops in connection with its motion for preliminary injunction is insufficient. *See Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 903-04 (noting that "even if a jury considered Trek an active or future producer of stationary bikes, [a jury] could reasonably conclude that stationary bikes and elliptical gliders are different enough from each other that consumers would not confuse the OrbiTrek with Trek's stationary exercise bikes."). Accordingly, these factors weigh in Asus's favor.

    iii.    <u>Similarity of the Marks</u>

"Obviously, the greater the similarity between the two marks at issue, the greater the likelihood of confusion." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|---|---|---|---|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

2000). We have developed three axioms that apply to the "similarity" analysis: 1) marks should be considered in their entirety and as they appear in the marketplace; 2) similarity is best adjudged by appearance, sound, and meaning; and, 3) similarities weigh more heavily than differences. *Id.*

As they appear in this Order and in the Parties' briefs, the marks are virtually identical. The *Eee Pad* Transformer and *Eee Pad* Transformer Prime add their proprietary trademark (the *Eee Pad*), and drop the "s" found at the end of "Transformers" on Hasbro's marks. As they are encountered in the marketplace, however, the marks are very different. Asus uses a spartan script for the word "Transformer," which appears at the end of its product name, often followed by the "TF 101" or "TF 201." It also is generally, although not always, accompanied by both the Asus brand name, and the proprietary *Eee Pad* mark. "*Eee Pad*" is printed in larger, decorative script, and the "Transformer TF 101" and "Transformer Prime TF 201" appear more like model numbers demarcating the primary *Eee Pad* mark. *See Yang Decl.* ¶ 15; *Krumholz Decl.* ¶¶ 2, 3.

By contrast, in the marketplace examples submitted by Hasbro, the "Transformers" mark is printed in small-caps, in a dramatic block script. *See Bouyer Decl.*, Exs. 1-4. Both the "T" and the "F" are capitalized, such that the mark generally appears as either "TRANSFORMERS" or "TRANS FORMERS." *See Archer Decl.* ¶ 16; *Lagor Decl.*, Ex. 1. The letters are heavily shadowed, giving the script a raised, three-dimensional effect, and a combination of blues, grays, blacks, and whites is employed to evoke the appearance of polished steel. The mark is also often accompanied by a Decepticon or Autobot icon.

Moreover, although the "Transformer" and "Transformers" word marks are almost identical, Asus uses the word to accurately describe a key feature of one of its *Eee Pad* tablet models – namely, its ability to "transform" into a laptop computer when attached to its accompanying QWERTY keyboard dock. The Ninth Circuit has indicated that initial interest confusion does not result in such circumstances where the products differ significantly and the mark is a common word used by many companies:

> In some circumstances, however, the apple grower might adopt a famous trademark without causing initial interest confusion. For example, an apple grower in Washington might register www.apple.com to promote his business. Although APPLE is a famous registered trademark of Apple Computer, Inc., many other companies also use the term APPLE to describe a variety of products.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|---|---|---|---|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

Indeed, the apple distributor probably does not infringe Apple Computer's mark because APPLE is also a common noun, used by many companies, and the goods offered by these two companies differ significantly.

*Interstellar Starship Services, Ltd. v. Epix, Inc.*, 304 F.3d 936, 944 (9th Cir. 2002) (citing *Hasbro Inc. v. Clue Computing, Inc.*, 232 F.3d 1, 2 (1st Cir. 2000) (noting very little similarity between Hasbro's board game CLUE and the products and services of Clue Computing).

In finding that the case before it in *Interstellar Starship* was more akin to the apple grower registering www.apple.com to sell apples, the Ninth Circuit noted that "[l]ike Apple Computer (or Hasbro), Epix has no exclusive claim to its trademark.  Indeed, the record reflects that at least eight companies have registered the EPIX mark or a close variation with the PTO." This reasoning is analogous here.  The marks generally appear differently in the marketplace, and although "Transformer" and "Transformers" sound virtually identical, Hasbro has no exclusive claim to the word "transformer" when applied to goods that differ significantly from its own, particularly when it is used to accurately describe a key feature of Asus's product.  Moreover, Asus submits evidence that there are 98 active United States trademarks in the PTO that include the word "transformer" but are unrelated to Hasbro.  *See Miclean Decl.* ¶ 12, Ex. 12.  Although the similarities between the *Eee Pad* Transformer Prime and the "Transformers Prime" mark are starker, Hasbro has introduced no evidence of the use of the "Transformers Prime" mark on any related goods.  Thus, even weighing similarities more heavily than differences, a jury could conclude that the marks are dissimilar, and the Court finds this factor neutral.  *See Entrepreneur Media*, 279 F.3d at 115 (noting that a reasonable juror could find "Entrepreneur" dissimilar from the defendant's "Entrepreneur Illustrated" and "EntrepreneurPR" marks, even on overlapping products); *M2 Software, Inc. v. Madacy Entertainment Co.*, 421 F.3d 1073, 1082 (9th Cir. 2005) (upholding determination that the similarity of the parties' "M2" marks weighed "only very slightly in M2 Software's favor" in light of the defendant's addition of the word "Entertainment," inclusion of other trademarks, and the fanciful nature of the plaintiff's "M2" mark).

        iv.    <u>Marketing Channels and Degree of Care Used by Consumers</u>

Hasbro argues that the overlap in marketing channels weighs in its favor because "searches on the internet, whether through Google, YouTube or at company-specific sites such as Office Depot or Amazon, yield search results that blend the products." *Mot.* 13:26-14:3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|---|---|---|---|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

"Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353. As the Ninth Circuit recently noted, however, this factor was important in *Sleekcraft* because the two products were sold in the same *niche* marketplaces, including boatshows, specialty retail outlets and trade magazines. *See Network Automation*, 638 F.3d at 1151. It becomes "less important when the marketing channel is less obscure," as "it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *See id.*

Hasbro points to the fact that a Google search for "optimus prime tablet" picks up Asus's "Transformer Prime" tablet, a search for "Transformer prime" causes Amazon to search its own site for "Asus transformer prime," and that a search for "transformers prime" returns "several Asus hits *and* Transformers Prime hits." *Mot.* 14:1-15. According to Hasbro, this "overlap in search results is bound to cause confusion." *Id.* The Court disagrees. First, for the most part, the Google search for "Transformer Prime" returns results related to Asus's products, while the results generated by the "Transformers Prime" search relate to Hasbro's animated series. *See Vanasse Decl.*, Exs 2, 3. Google is the world's largest search engine and Amazon is one of the largest retailers on the internet. Reasonable consumers understand that when executing a key word search, the results they are presented with originate from thousands of sources, if not more. *See Network Automation*, 638 F.3d at 1152 ("the default degree of consumer care is becoming more heightened as the novelty of the Internet evaporates and online commerce becomes commonplace") (citing *Toyota Motor Sales v. Tabari*, 610 F.3d 1171 (9th Cir. 2010)) (vacating preliminary injunction and holding "it was unlikely that a reasonably prudent consumer would be confused into believing that a domain name that included a product name would necessarily have a formal affiliation with the maker of the product, as '[c]onsumers who use the internet for shopping are generally quite sophisticated about such matters.'").

Second, although the "Transformers Prime" Google search results offered by Hasbro show hits relating to the Transformers Prime animated series and the *Eee Pad* Transformer Prime tablet, Hasbro makes no argument that *these products* are related. *See Vanasse Decl.*, Ex. 3. And while the Office Depot search for the word "Transformers" returns product results for the "ASUS *Eee Pad* TF 101-A1 Tablet" and several "Razer Transformers 3 RC21" carrying cases – a Transformers-branded product – the source of each is clearly designated. *See Vanasse Decl.*, Ex. 1. Moreover, the first result generated by this search is the "ABBYY PDF Transformer," a software product which enables users to convert documents to PDF, and which therefore makes use of the word "Transformer" in a manner similar to Asus. *Id.* As in *Network*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|---|---|---|---|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

*Automation*, it would be rare for a commercial retailer not to sell online, and Office Depot, Amazon and Google combine thousands, hundreds of thousands, and even millions of unrelated products. *See* 638 F.3d at 1149. Therefore, the fact that both Hasbro's and Asus's products appear on the search results pages is at best equivocal. *See Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004).

Furthermore, any concern that a consumer using Hasbro's mark to search for Hasbro's product might be confused by a results page that shows both Hasbro's and Asus's product is ameliorated when the sources of the respective products are clearly identified. *See Network Automation*, 638 F.3d at 1149. In this case, the hits refer to the "Asus Transformer Prime" or the *Eee Pad* Transformer Prime, often with a thumbnail image that clearly and immediately conveys the nature of the products. *See Vanasse Decl.*, Exs. 1, 2. At the very least, considerable factual questions are presented regarding whether reasonable consumers shopping for electronics on large inventory sites like Amazon and Office Depot are able to distinguish between products employing the word "transformer" for its primary descriptive meaning, and those referring to the Transformers brand. Such questions tip this factor in favor of Asus.

The Court's finding that Hasbro has not shown that the overlapping marketing channels present a likelihood of consumer confusion is strengthened by the degree of care likely to be used by customers. When goods are expensive, buyers can be expected to exercise greater care in making purchases. *See Sleekcraft*, 599 F.2d at 353. The $550-$750 price tag thus weighs in Asus's favor. The nature of Asus's product also supports this finding, as buyers of high-end computer products are even less likely to be flummoxed by search engine results than the general population. *See Network Automation*, 638 F.3d at 1152 ("The nature of the goods and the type of consumer is highly relevant to determining the likelihood of confusion in the keyword advertising context. A sophisticated consumer of business software exercising a high degree of care is more likely to understand the mechanics of Internet search engines and the nature of sponsored links."). Moreover, "if the ordinary consumers of this particular product are particularly sophisticated and knowledgeable, they might also be aware that [Asus] is the source of [the *Eee Pad*] and not be confused at all." *See id.* at 1149-50. On this record, both factors weigh in favor of Asus.

v.    <u>Evidence of Actual Confusion</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|---|---|---|---|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

"[A] showing of actual confusion among significant numbers of consumers provides strong support for the likelihood of confusion," but is not necessary to a finding of likelihood of confusion under the Lanham Act. *Network Automation*, 638 F.3d at 1151 (citing *Playboy*, 354 F.3d at 1026). "Proving actual confusion is difficult ... and the courts have often discounted such evidence because it was unclear or insubstantial." *Sleekcraft*, 599 F.2d at 352.

Hasbro relies on two online reviews and the search results discussed *supra* to conclude that these "kinds of associations reflect consumer confusion over whether Asus's product is affiliated with, connected to, or associated with the Transformers brand." *See Mot.* 17:15-28. Suffice it to say, the Court does not find this evidence persuasive. Though the articles reference Transformers themes in connection with the Asus *Eee Pad* Transformer Prime, they are tech-industry overviews of the development, launch, and capabilities of Asus and its competitor's products. *See Vanasse Decl.*,Ex. 8, 9. Moreover, they are at best equivocal in that they equally suggest that the authors, at least, are not confused regarding the origin of Asus's *Eee Pad* Transformer and Transformer Prime tablets. Such evidence is selective and minimally probative, particularly on the "sparse record supporting preliminary injunctive relief." *Network Automation*, 638 F.3d at 1151. For reasons already discussed, the Court also disagrees that the search results alone demonstrate a likelihood of consumer confusion. Neither party submits any other evidence regarding actual confusion, "which is not surprising given the procedural posture" on a motion for preliminary injunction. *See id.* at 1151. Thus, the Court "conclude[s] that this factor should be accorded no weight." *Id.*; *accord Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, 475 F. Supp. 2d 995 (C.D. Cal. 2007) (rejecting both parties' hearsay and inconclusive evidence and concluding that the actual confusion factor was neutral at the preliminary injunction stage).

      vi.    <u>Asus's Intent</u>

"An intent to confuse customers is not required for a finding of trademark infringement." *GoTo.com*, 202 F.3d at 1208. "Where an alleged infringer chooses a mark he knows to be similar to another, one can infer an intent to confuse." *Entrepreneur Media*, 279 F.3d at 1148. However, this inference may be undermined where a defendant's knowledge of the similar mark "provides no *direct* evidence of [the defendant's] judgment concerning likely confusion." *See id.* (emphasis in original).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|----------|----------------------|------|----------------|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

Asus does not dispute that it had actual notice of the Transformers mark.  In fact, Hasbro submits evidence that a division of Asus partnered with Paramount Pictures prior to the London premier of one of the Transformers movies to design and give away a Transformers-themed Asus laptop.  *See Bouyer Decl.*¶ 13; *Chen Decl.* ¶ 5.  However, in response to Hasbro's January 19, 2011 cease and desist letter, Asus indicated its understanding that it was using the word "transformer" in a descriptive sense to describe the transformative nature of its tablet, and that it did not believe that Hasbro's mark extended to the *Eee Pad*'s class of goods.  A jury could determine that this evidence undermines the inference of an intent to confuse consumers that can ordinarily be drawn from the knowing selection of a similar mark.  Hasbro never responded to this letter, and its own internal correspondence raises a factual question with regard to whether Hasbro believed the "*Eee Pad* Transformer" was non-infringing.  *See Vanasse Decl.*, Ex. 19 (letter from Hasbro affiliate to Hasbro's global director of IP indicating affiliate's understanding that IP director had "concluded [Hasbro did] not have any action against Asus because they use the mark in different goods from our goods and their use of the mark is descriptive of the feature of their product").  The subsequent release of the second "Transformer Prime" model is more suspect, and although Asus denies that it was aware of Hasbro's "Transformers Prime" animated television show, the "failure to investigate the possibility that [Transformers Prime] was being used as a mark" is some evidence of bad faith.  *See Fortune Dynamic*, 618 F.3d at 1043.  However, Asus again submits declaratory evidence that the descriptive term "Prime" was selected for its ordinary meaning and was intended to indicate to consumers that the new *Eee Pad* tablet was of high-quality, and was the first tablet to feature the NVIDIA quad-core processor and the latest Google *Android* operating system.  Given the factual questions and conflicting inferences that may be drawn from the evidence of Asus's intent, the Court concludes that this factor, too, is neutral.

vii.    Weighing of the Factors

"The *Sleekcraft* factors are [] a 'guide' to decision-making, intended to channel the analytical process but not dictate any result."  The Court finds that the factors most probative of whether consumers are likely to be confused by the sale of Asus's *Eee Pad* Transformer and *Eee Pad* Transformer Prime are the relatedness of the goods, the strength of the marks, their similarity, and the degree of care used by consumers.  On the limited record before the Court, only the strength of the Transformers and Transformers Prime marks weighs in Hasbro's favor. The lack of proximity between the "related" goods and the purportedly infringing tablets – despite the fact that there are over ten thousand Transformers-branded products to choose from –

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|---|---|---|---|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

weighs in Asus's favor, as do factual questions regarding the degree of care and sophistication likely to be exercised by purchasers in the overlapping marketing channels.  The remaining factors likewise require factual development, or currently turn on disputed issues, rendering them neutral or of no weight at the preliminary injunction stage.  In sum, Hasbro has failed to show a sufficient likelihood of success on the merits of its trademark infringement claim to warrant preliminary injunctive relief.  *See Playmakers LLC v. ESPN, Inc.*, 376 F.3d 894, 898 (9th Cir. 2004).

        b.    <u>Trademark Dilution by Blurring</u>

A plaintiff seeking relief under federal anti-dilution law must show that its mark is famous and distinctive, that defendant began using its mark in commerce after plaintiff's mark became famous and distinctive, and that defendant's mark is likely to dilute plaintiff's mark. *Visa Intern. Service Ass'n v. JSL Corp.*, 610 F.3d 1088, 1089-90 (9th Cir. 2010); 15 U.S.C. § 1125(c)(1).  "There are two types of dilution, but here we are concerned only with dilution by blurring, which occurs when a mark previously associated with one product also becomes associated with a second." *Id.* at 1090; *see* 15 U.S.C. § 1125(c)(2)(B).  "This weakens the mark's ability to evoke the first product in the minds of consumers." *Id.*  Because protection from dilution comes close to being a "right in gross," it is disfavored and applies only to a very select class of marks with "such powerful consumer associations that even non-competing uses can impinge on their value." *Nissan Motor*, 378 F.3d at 1011.  "For this reason, [] dilution protection [extends] only to those whose mark is a 'household name.'" *Id.*  Asus disputes that the Transformers mark is sufficiently famous, but raises no argument that, in the event the mark is determined to be famous, such fame arose after its use began.  Accordingly, the Court addresses only the famousness of the Transformers mark and whether the marketing and sale of the *Eee Pad* Transformer and Transformer Prime is likely to cause dilution.

        i.    <u>Fame</u>

"[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A).  Factors a court may consider in determining whether a mark is famous include:  (1) the duration, extent and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties, (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark, (3) the extent of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|---|---|---|---|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

actual recognition of the mark, and (4) whether the mark was registered under the Act of March 3, 1881, the Act of February 20, 1905, or on the principal register.  *Id.*  "[S]urveys showing that a large percentage of the general public recognizes the brand, press accounts about the popularity of the brand, or pop-culture references involving the brand would provide evidence of fame."  *Thane Intern.*, 305 F.3d at 912.

Given the high bar for deeming a mark "famous," it is clear that only the "Transformers" mark potentially qualifies.  Hasbro makes a strong showing with regard to factors 1, 2 and 4. The Transformers films have grossed over 2.65 billion worldwide, the mark has been in use for almost 30 years, approximately 11,000 Transformers-branded products have been licensed, and Hasbro alone has spent hundreds of millions of dollars promoting and protecting the brand. Asus disputes that the Transformers mark satisfies the third factor – the actual recognition of the mark – contending that if allowed to undertake a survey it expects to show that it is not sufficiently well-known by girls, women and more senior Americans.  The Ninth Circuit has indicated that the analogous question of a mark's commercial strength, which is also based on "actual marketplace recognition," is generally ascertained via an "evidence-intensive inquiry" that may be an unnecessary and improper consideration on a motion for preliminary injunction. *See Network Automation*, 638 F.3d at 1149-50.  Although the Yahoo! Sports blog and New York Times article are "pop-culture" references evidencing fame, the determination of whether "Transformers" is truly a "household name" and whether "customers *in general* have any brand association" with Hasbro's marks is likely to be a fact-based inquiry, weighing against preliminary relief.  *See Thane Intern.*, 305 F.3d at 912 (finding that the "incidental appearance of a Trek bicycle" alongside Lance Armstrong on numerous prominent displays, such as the front page of large circulation newspapers and on Wheaties boxes failed to raise a triable issue of fact as to fame).  Nonetheless, the Court considers the second element, namely, whether Asus's use is likely to cause dilution by blurring.

ii.   Likelihood of Blurring

In determining whether a mark is likely to cause dilution by blurring, a court may consider all relevant factors, including:  (1) the degree of similarity between the accused mark and the famous mark; (2) the degree of inherent or acquired distinctiveness of the famous mark; (3) the extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; (4) the degree of recognition of the famous mark; (5) whether the user of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|---|---|---|---|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

accused mark intended to create an association with the famous mark; and (6) any actual association between the accused mark and the famous mark.  *See* 15 U.S.C. § 1125(c)(1)(B).[2]

As the Ninth Circuit has repeatedly noted, dilution applies "only to those marks which are both truly distinctive *and* famous, and therefore most likely to be adversely affected by dilution." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 876 (9th Cir. 1999).  Although analyzed under the "famousness" instead of the "blurring" prong in light of how the federal dilution statute was structured at that time, the Ninth Circuit's decisions in *Avery Dennison* and *Thane International* undermine Hasbro's likelihood of success on the merits of its dilution by blurring claim.

First, the Transformers mark is also a common, descriptive word which Asus uses in its common, descriptive sense.  The Supreme Court has acknowledged "the undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first."  *KP Permanent Make-up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 121 (2004). Second, the fact that almost a hundred registered trademarks include some variation of the word "transformer" makes it unlikely that the Transformers mark is sufficiently distinctive to be eligible for protection against dilution.  *See Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 878 (9th Cir. 1999); *Thane Intern.*, 305 F.3d at 912 fn.14 ("the [dilution] factor suggesting that courts consider 'the nature and extent of use of the same or similar marks by third parties,' also strongly suggests that the [Trek bicycle mark] is not famous.  § 1125(c)(1)(G).  Although the parties dispute how much third party use of the word 'trek' exists, it is clear that others have incorporated this common English language word into their trademark.").

---

[2] The Court also notes Asus's argument that any dilution by blurring that might occur here is due to Hasbro's excessive licensing of its Transformers and Transformers related marks to over 800 licensees covering 11,000 different products.  "Dilution isn't confusion; quite the contrary. Dilution occurs when consumers form new and different associations with the plaintiff's mark. 'Even if no one suspects that the maker of analgesics has entered into the snowboard business, [the existence of a "Tylenol snowboards"] mark will now bring to mind two products, not one.'" *Visa Intern.*, 610 F.3d at 1090.  "[Dilution occurs when a mark previously associated with one product also becomes associated with a second." *Id.*  Thus, Asus argues that the fact that the public may associate the "Transformers" brand with products other than Hasbro's toy robots, or even the films, is the result of Hasbro's decision to engage in cross-promotions, merchandizing, and excessive licensing.  While interesting, neither party develops this argument.  Accordingly, the Court declines to consider it at this time.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|---|---|---|---|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

*Visa Intern. Service Ass'n v. JSL Corp.* reaffirms the applicability of this reasoning in determining whether a claim for trademark dilution is made out. *See* 610 F.3d 1088 (9th Cir. 2010). In that case, the Ninth Circuit considered whether the defendant's website –www.evisa.com– was likely to dilute the famous Visa brand. In *Visa*, the Court first noted that the marks were "effectively identical," as the prefix "e," which is commonly used to refer to the electronic or online versions of a brand, did no more to distinguish the two marks than would the words "Corp." or "Inc." tacked onto the end. *See id.* at 1090. The Court also noted that Visa was a strong, arbitrary mark as applied to credit cards. *Id.* This, combined with Visa's uncontroverted evidence that it was the world's top brand in financial services and that Visa cards were used for online purchases almost as often as all other credit cards combined was enough to support summary judgment in its favor on a likelihood of dilution. *See id.* at 1089-90.

However, in reaching this determination, the Ninth Circuit noted that when "a trademark is also a word with a dictionary definition, it may be difficult to show that the trademark holder's use of the word is sufficiently distinctive to deserve anti-dilution protection because such a word is likely to be descriptive or suggestive of an essential attribute of the trademarked good." *See id.* at 1091. Moreover, such a word may already be in use as a mark by third parties. *Id.* The court then distinguished its holding in *Thane International*, on the grounds that there the court "rejected a dilution claim by Trek Bicycle Corporation for its "Trek" mark in part because it played heavily off the dictionary meaning of 'Trek,' suggesting that the bicycles were designed for long or arduous journeys." *Id.* (citing *Thane Intern.*, 305 F.3d at 912 n.4). *Visa* was distinguishable, however, as the credit card company's use "played only weakly off the dictionary meaning and [the defendant] presented no evidence that a third party has used the word as a mark." *Id.* Finally, the Court noted that [*the defendant*] was not using the word visa for its literal dictionary definition, and that this would be a different case if it were. *Id.*

The Court finds that factual questions going to the determination of whether this case properly falls under *Thane International* or *Visa* preclude a finding of likelihood of success on the merits at this stage. Asus's use of the word "Transformer" squares with one of its dictionary definitions and therefore describes an aspect of its product in a straightforward manner. Almost a hundred registered trademarks also involve the word "transformer," dozens of which are registered in International Class 09, the same class as Asus and the *Eee Pad*. *See Miclean Decl.*, ¶¶ 3, 4, 12, Ex. 12. Unlike Visa's use of its mark, but like Trek Bicycle's, the Transformers mark has descriptive attributes as applied to robots that convert or transform into other forms. Moreover, although "Transformer" and "Transformers" are virtually identical on paper, Asus

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|---|---|---|---|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

generally markets its product as the *Eee Pad* Transformer and the *Eee Pad* Transformer Prime, often with their TF 101 and TF 201 model numbers following the brand names. These do more to distinguish the marks than a mere "e" prefix or a "corp" suffix, and while the Ninth Circuit has recently clarified that "the plain language of 15 U.S.C. § 1125(c) does not require that a plaintiff establish that the junior mark is identical, nearly identical or substantially similar to the senior mark in order to obtain injunctive relief," *see Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158, 1172 (9th Cir. 2011), as discussed in connection with Hasbro's infringement claims, the similarities between the marks as they appear in the marketplace are merely neutral.

Finally, the Court notes that Hasbro's showing with respect to whether Transformers is a household name is not as strong as that presented in *Visa*. Whether a defendant's mark creates a likelihood of dilution is a factual question that is generally not appropriate for decision even on summary judgment. *See Visa Intern.*, 610 F.3d at 1090. Accordingly, the Court concludes that Hasbro has failed make a clear showing it is likely to succeed on the merits of its dilution claim.

B.   Irreparable Injury

Hasbro relies heavily on the presumption of irreparable injury applicable where a trademark holder establishes a likelihood of success on the merits. *See Mot.* 23:7-24:2. Here, however, Hasbro fails to show a likelihood of success on the merits, and therefore is not entitled to the presumption. *See Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, 475 F. Supp. 2d 995, 1007 (C.D. Cal. 2007) (holding presumption of irreparable harm unavailable because Plaintiff merely raised "serious questions" going to the merits, as opposed to a probability of success). Beyond the presumption of injury, Hasbro alludes conclusorily to "a worldwide marketing launch of Transformers Prime merchandise" it is "planning" for March 2012, but does not clarify what types of products will be featured in this launch. *Id.* The Court therefore is unable to determine whether Asus's ongoing marketing and sale of its high-end tablets will result in any injury. Similarly, although Hasbro generally avers that its ability to license the Transformers brand to other computer manufacturers will be harmed, it provides no details with respect to which computer companies it has been in discussions with or what products have been contemplated. Accordingly, Hasbro has failed to demonstrate that the risk of irreparable injury, if any, rises above a mere possibility.

C.   Balance of Hardships

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|---|---|---|---|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

Hasbro seeks to preliminarily enjoin Asus from "using any word or words which are likely to cause confusion with the Transformers or Transformers Prime marks, including the '*Eee Pad* Transformer" or "Transformer," or the "*Eee Pad* Transformer Prime" or "Transformer Prime," as a trademark, service mark, product name or trade name, and from "using, marketing, promoting, advertising, producing, distributing, selling or importing" these products. *See Compl.*, 11:1-21. Hasbro also requests, among other remedies, that the Court order Asus to instruct all third parties that they must cease all sales of Asus's products bearing the name "Transformer" or "Transformer Prime." *See id.*, 14:1-5.

The Court finds that the balance of hardships tips in Asus's favor. In *Playmakers LLC*, the Ninth Circuit reviewed a district court's determination that the balance of hardships weighed against granting a preliminary injunction. *See* 376 F.3d at 898. In that case, a sports agency that represented football players, "Playmakers LLC," brought suit against ESPN over its production of a television series entitled "Playmakers" that allegedly portrayed NFL players in a negative light. *See id.* at 895. Playmakers LLC waited until after the series had been on the air for a year, and then sought preliminary injunctive relief to prevent the airing of a second season. *See id.* Playmakers LLC contended that the controversial program was likely to devalue its mark and the goodwill of its business because, *inter alia*, professional and aspiring professional football players likely would decline to deal with LLC after mistakenly associating plaintiff with the gritty series. *See id.* The Ninth Circuit held that the district court appropriately contrasted the evidence before it demonstrating ESPN's significant financial investment in its series and the advertising revenue that would be lost if an injunction were to issue, against the "lack of proof quantifying the harm that LLC would suffer absent preliminary relief." *See id.* Accordingly, the district court did not abuse its discretion in determining that, even assuming the plaintiff demonstrated serious questions going to the merits, it did not show that the balance of hardships tipped sharply in favor of granting an injunction. *Id.* (citing *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 869 (9th Cir. 2003).

The same equitable concerns are implicated here. Despite knowledge of Asus' intent to market a product called the *Eee Pad* Transformer in mid-January, 2011, Hasbro did not pursue its rights at that time beyond sending a single cease-and-desist letter. Hasbro also provided no response to Asus's reply indicating its belief that its use of the word "transformer" was a descriptive, non-infringing use, and that Hasbro's mark did not extend to the classification of high-end computer products. Even though the *Eee Pad* Transformer was offered for sale in April 2011, Hasbro still did not bring suit until eight months later. It likewise waited until two

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|----------|----------------------|------|----------------|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

months after Asus had announced the release of its second product, the *Eee Pad* Transformer Prime, before filing suit and seeking a preliminary injunction on the eve of Asus's product launch.

Asus submits uncontroverted evidence that considerable hardship will result from the recall of its goods that are already in circulation, and points out that there is typically a very short window of opportunity for a new computer device to capitalize on its ability to offer the latest technology, speed, graphics, and other features most in demand. *See Yang Decl.* ¶ 18. Right now, the Asus *Eee Pad* Transformer Prime TF 201 is the world's first quad core tablet with Google's latest *Android* operating system. *Id.* Asus contends that if the requested injunction issues, it will lose its window of opportunity to have the marketing and technology edge over its competitors, and that this in turn would affect the production of Asus's tablets and hurt the component suppliers and fabricators as well. Given that Asus has demonstrated that an injunction is likely to cause significant harm to its business, such harm was exacerbated by Hasbro's delay in bringing suit, and Hasbro produces no substantive evidence that it will suffer any non-compensable injury if the injunction does not issue, the Court finds that, "even assuming [Hasbro has] demonstrated serious questions going to the merits, it [has] not show[n] that 'the balance of hardships tips sharply in favor' of granting an injunction." *See Playmakers*, 376 F.3d at 898.

D.     <u>Public Interest</u>

For some of the same reasons discussed in concluding that the balance of the hardships favors Asus, the Court concludes that the present injunction would not serve the public interest. First, as noted, Asus contends that a recall would hurt its component suppliers and fabricators, and submits that as of February 24, 2012, it had received over 2,000 pre-orders (end user customers who have ordered Asus tablet computers and given credit card information), and that retailer fulfillment orders for the next two months total approximately 80,000 tablet computers. *See Hsu Decl.* ¶ 3. Second, the Court agrees that the arguably-descriptive attributes of the Transformers mark and Asus's use of the word to accurately describe a feature of its product suggest that preliminary relief does not clearly serve the public interest. "While the public and the trademark owner have an interest in preventing consumer confusion, there is also a broad societal interest in preserving common, useful words for the public domain. We do not want to prevent the commercial use of descriptive words to name products, as straightforward names are often the most useful identifiers." *Entrepreneur Media*, 279 F.3d at 1148. Accordingly, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#29**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10437 PSG (Ex) | Date | March 23, 2012 |
|----------|----------------------|------|----------------|
| Title | Hasbro, Inc. v. Asus Computer International, Inc., *et al.* | | |

Court concludes that, on balance, issuance of a preliminary injunction is not in the public interest.

IV.   <u>Conclusion</u>

In sum, Hasbro has not demonstrated a likelihood of success on the merits of its infringement and dilution claims. Even assuming "serious questions" going to the merits are raised, the present record fails to evidence a likelihood of irreparable injury or that the balance of the equities tips sharply in Hasbro's favor. Having waited until the purportedly infringing and diluting tablets had been on the market for almost a year, the Court sees no grounds for invoking the extraordinary and drastic remedy of preliminary relief that would reverse the status quo ante before the parties have had the opportunity to try the case on its merits. The motion is DENIED.[3]

**IT IS SO ORDERED.**

---

[3]Because the Court concludes that Hasbro has failed to show entitlement to a preliminary injunction, the Court need not address the merits of Asus's fair use defense at this time.